# EXHIBIT A

**STATE OF NORTH CAROLINA**

MECKLENBURG _____ County

**File No.**
26CV010249-590

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff* | **CIVIL SUMMONS** |
| Ashley Bolton, as Guardian ad Litem for K.B., a minor | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *Address* c/o Law Office of Faith Fox, PLLC | Charlotte-Mecklenburg |
| P.O. Box 30161 | Board of Education |
| *City, State, Zip* | G.S. 1A-1, Rules 3 and 4 |
| Charlotte, NC 28230 | |

**VERSUS**

*Name Of Defendant(s)*
Charlotte-Mecklenburg Board of Education, City of Charlotte, Demetrus McDaniel, Individually and in her Official Capacity, Sanders Fairley, Individually and in his Official Capacity, Nicole Coleman, Individually and in her Official Capacity, and Jane / John Doe(s), Individually and in their Official Capacities.

*Date Original Summons Issued*
MAR 4 2026

*Date(s) Subsequent Summons(es) Issued*

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant* 5 | *Name And Address Of Defendant* 6 |
|---|---|
| Nicole Coleman | Jane / John Doe(s) |
| c/o Charlotte Mecklenburg Police Department | c/o Stephanie Sneed, Board of Education Chair |
| 601 E. Trade Street | Charlotte-Mecklenburg Government Center |
| Charlotte, NC 28202 | 600 E. Fourth Street |
| | Charlotte, NC 28202 |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)* | *Date Issued* 2/19/2026 | *Time* 4:52:13 pm ☐ AM ☐ PM |
|---|---|---|
| Faith R. Fox, Esq. | *Signature* | |
| The Law Office of Faith Fox, PLLC | /s/ Hope Seymour | |
| P.O. Box 30161 | | |
| Charlotte, NC 28230 | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| ☐ **ENDORSEMENT (ASSESS FEE)** This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 12/23
© 2023 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| | Date Accepted | Signature |
|---|---|---|
| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 1. ☐ Other: (type or print name) | | |

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| | Date Accepted | Signature |
|---|---|---|
| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 2. ☐ Other: (type or print name) | | |

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 12/23
© 2023 Administrative Office of the Courts

File No.

**26CV010249-590**

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Name And Address Of Plaintiff 1

Ashley Bolton, as Guardian ad Litem for K.B., a minor

Name And Address Of Plaintiff 2

## GENERAL
## CIVIL ACTION COVER SHEET

☒ INITIAL FILING    ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

### VERSUS

Name And Address Of Defendant 1
Charlotte-Mecklenburg Board of Education
c/o Stephanie Sneed, Board Chair
Charlotte-Mecklenburg Government Center
600 E. Fourth Street
Charlotte, NC 28202

Summons Submitted
☒ Yes    ☐ No

Name And Address Of Defendant 2
The City of Charlotte
c/o Andrea Leslie-Fite, Esq.
Charlotte-Mecklenburg Government Center
600 E. Fourth Street
Charlotte, NC 28202

Summons Submitted
☒ Yes    ☐ No

Name And Address Of Attorney Or Party, If Not Represented
(complete for initial appearance or change of address)

Faith R. Fox, Esq.
Law Office of Faith Fox, PLLC
P.O. Box 30161
Charlotte, NC 28230

| Telephone No. | Cellular Telephone No. |
|---|---|
| 704 762-1588 | |

| NC Attorney Bar No. | Attorney Email Address |
|---|---|
| 49729 | F.Fox@faithfoxlaw.com |

☒ Initial Appearance in Case    ☐ Change of Address

| Name Of Firm | Fax No. |
|---|---|
| Law Office of Faith Fox, PLLC | 704 980-7554 |

Counsel For
☒ All Plaintiffs    ☐ All Defendants    ☐ Only: (list party(ies) represented)

☒ Jury Demanded In Pleading    ☐ Complex Litigation    ☐ Stipulate to Arbitration

### TYPE OF PLEADING

(check all that apply)

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) (see Note)
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim (list on back) (CRSS) Assess Court Costs
☐ Dismiss (DISM) Assess Court Costs
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☒ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other (specify and list each separately)

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

Case 3:26-cv-00245-MEC-DCK Document 1-1 Filed 03/26/26 Page 4 of 43

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

☐ Administrative Appeal (ADMA)
☐ Appointment Of Receiver (APRC)
☐ Attachment/Garnishment (ATTC)
☐ Claim And Delivery (CLMD)
☐ Collection On Account (ACCT)
☐ Condemnation (CNDM)
☐ Contract (CNTR)
☐ Discovery Scheduling Order (DSCH)
☐ Injunction (INJU)

☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
☐ Medical Malpractice (MDML)
☐ Minor Settlement (MSTL)
☐ Money Owed (MNYO)
☐ Negligence - Motor Vehicle (MVNG)
☒ Negligence - Other (NEGO)
☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)
☐ Possession Of Personal Property (POPP)

☐ Product Liability (PROD)
☐ Real Property (RLPR)
☐ Specific Performance (SPPR)
☒ Other (specify and list each separately)

Assault & Battery; Gross Negligence; Negligent Hiring, Retention, Supervision and Training; Intentional Infliction of Emotional Distress; Negligent Infliction of Emotional Distress; Civil Conspiracy; Failure to Protect / Deliberate Indifference to Student Safety; Obstruction of Justice; Respondeat Superior; Punitive Damages; Federal Claims (42 U.S.C. § 1983; 42 U.S.C. §12132; 29 U.S.C. §794; 42 U.S.C. §12203; 42 U.S.C. §1988

| Date | Signature Of Attorney/Party |
|---|---|
| February 19, 2026 | *[signature]* |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☒ Additional Defendant(s)    ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| 3 | Demetrus McDaniel | ☒ Yes  ☐ No |
| 4 | Sanders Fairley | ☒ Yes  ☐ No |
| 5 | Nicole Coleman | ☒ Yes  ☐ No |
| 6 | Jane / John Doe(s) | ☒ Yes  ☐ No |
| | | ☐ Yes  ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

AOC-CV-751, Side Two, Rev. 3/19
© 2019 Administrative Office of the Courts

STATE OF NORTH CAROLINA
MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

| | | |
|---|---|---|
| ASHLEY BOLTON, Individually and as GUARDIAN AD LITEM of K.B., a minor, | ) ) | |
| **Plaintiffs,** | ) ) | |
| | ) | **COMPLAINT** |
| v. | ) | **(JURY TRIAL DEMANDED)** |
| | ) | |
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, | ) ) | |
| DEMETRUS McDANIEL, Individually and in her Official Capacity, | ) ) | |
| SANDERS FAIRLY, Individually, and in his Official Capacity, | ) ) | |
| CITY OF CHARLOTTE, | ) | |
| OFFICER NICOLE COLEMAN, Individually, and in her Official Capacity, | ) ) | |
| JANE/JOHN DOE(S), Individually as an Agents of named Parties, in their Official Capacities, | ) ) | |
| **Defendants.** | ) ) | |

**NOW COMES PLAINTIFF** Ashley Bolton, Individually and as *Guardian ad Litem* of minor child K.B., by and through undersigned counsel, pursuant to North Carolina General Statutes (hereinafter *"N.C.G.S."*) and Federal law, bringing suit against Defendants Charlotte Mecklenburg Board of Education, The City of Charlotte, Demetrius McDaniel, Sanders Fairly, Nicole Coleman, and Jane / John Doe(s), alleging against all Defendants, jointly and severally, as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff **ASHLEY BOLTON** (hereinafter *"Mother"* and/or *"GAL"*), is a citizen and resident of the City of Charlotte, County of Mecklenburg, in the State of North Carolina. At all times relevant to this action, she has been over the age of 18 years. She submits herself, individually, and as the parent and guardian of K.B.[1] (hereinafter *"minor child"*), to the jurisdiction of this Court.

---

[1] While enrolled as a student within Charlotte-Mecklenburg Schools ("CMS"), K.B. was formally identified by CMS as a student with disabilities and was provided with an Individualized Education Program ("IEP") pursuant to the Individuals with Disabilities Education Act ("IDEA"), as well as a Section 504 Plan, which set forth specific accommodations, behavioral supports, and safeguards necessary to ensure his meaningful access to educational programs, services, and activities.

2. Defendant **CHARLOTTE-MECKLENBURG BOARD OF EDUCATION** (hereinafter *"The Board"*), is a body corporate with the capacity to sue and be sued, charged by law with the governance, supervision, and control of the public school system within Mecklenburg County. The Board is the governing authority of the public school system, commonly known as **Charlotte-Mecklenburg Schools** (hereinafter *"CMS"*), which encompasses the vast majority of Mecklenburg County, North Carolina, and serves over 144,000 students. Charlotte Mecklenburg Schools may be served through its Board Chair, Stephanie Sneed, at Charlotte-Mecklenburg Government Center, 600 E. Fourth Street, Charlotte, NC 28202. The Board and CMS will herein be referred to as *"CMS Defendants."*

3. Defendant **CITY OF CHARLOTTE**, is a municipal corporation organized and existing under the laws of the State of North Carolina. The City of Charlotte, located at Charlotte-Mecklenburg Government Center, 600 E. Fourth Street, Charlotte, NC 28202, is the largest city in North Carolina and operates as a local governmental entity with the authority to enact policies, customs, practices, and procedures governing its departments, employees, and agents, responsible for the operation, supervision, training, discipline, and control of the **Charlotte-Mecklenburg Police Department** (hereinafter *"CMPD"*), a department of the City charged with law enforcement within the City's jurisdiction. CMPD officers are employees and/or agents of the City of Charlotte. The City of Charlotte and CMPD will herein be referred to as *"CMPD Defendants."*

4. Upon information and belief, Defendant **DEMETRUS McDANIEL** (hereinafter *"Principal McDaniel"*), is a citizen and resident of the City of Charlotte County of Mecklenburg, in the State of North Carolina. Employees, teachers, administrators, staff members, and agents working within Charlotte-Mecklenburg Schools are employees or agents of the Charlotte-Mecklenburg Board of Education, and act within the course and scope of their employment when performing duties for CMS. At all times relevant to this action, she has been over the age of 18 years.

5. Upon information and belief, Defendant **SANDERS FAIRLY** (hereinafter *"Vice Principal Fairly"*), is a citizen and resident of the City of Charlotte County of Mecklenburg, in the State of North Carolina. Employees, teachers, administrators, staff members, and agents working within Charlotte-Mecklenburg Schools are employees or agents of the Charlotte-Mecklenburg Board of Education, and act within the course and scope of their employment when performing duties for CMS. At all times relevant to this action, he has been over the age of 18 years.

6. Upon information and belief, Defendant **OFFICER NICOLE COLEMAN** (hereinafter *"Defendant Coleman"*), is a citizen and resident of the City of Charlotte County of Mecklenburg, in the State of North Carolina. At all times relevant, Defendant Coleman was acting within the course and scope of her employment with the City of Charlotte, and pursuant to the authority granted to her by the City, the State of North Carolina, and applicable municipal ordinances. The City of Charlotte is legally responsible for the

Case 3:26-cv-00245-MEO-DCK    Document 1-1    Filed 03/26/26    Page 7 of 43

actions, omissions, policies, customs, and practices of its employees and agents, including CMPD officers, to the extent permitted by law. At all times relevant to this action, she has been over the age of 18 years.

7. Defendants **JANE / JOHN DOE(S)** (hereinafter *"Defendant(s) Doe"*), are employees, representatives, and/or agents of The Charlotte Mecklenburg Board of Education, and/or The City of Charlotte. Identities of the individual Defendants Doe, are presently unknown to Plaintiffs, and therefore are sued by such fictitious names. Plaintiffs will seek leave to amend the Complaint once true names are ascertained.

8. At all relevant times, the Charlotte-Mecklenburg Board of Education maintained policies, customs, or practices, or demonstrated deliberate indifference, that were the moving force behind Defendant Vice Principal Fairly's violation of rights alleged herein, as implemented through Charlotte-Mecklenburg Schools.

9. At all relevant times, the City of Charlotte maintained one or more policies, customs, or practices that were the moving force behind the constitutional violations alleged herein, including deliberate indifference to the rights of persons with whom CMPD Defendant Coleman, and Jane/John Doe Defendants, came into contact.

10. The acts set forth in this Complaint were permitted, authorized, tolerated, ratified, ordered and/or done by the Defendants' officers, agents, employees and/or representatives, while actively engaged in Defendants' business.

11. At all relevant times, The Charlotte-Mecklenburg Board of Education was legally responsible for the acts and omissions of its officers, employees, and agents, as well as those operating under the name Charlotte-Mecklenburg Schools.

12. At all relevant times, The City of Charlotte owed a duty to exercise reasonable care in the hiring, training, supervision, and retention of CMPD officers, and breached that duty through acts and omissions that proximately caused the injuries and damages alleged.

13. Upon information and belief, during all times relevant to this complaint, The Charlotte-Mecklenburg Board of Education and The City of Charlotte[2], maintained liability insurance pursuant to N.C.G.S. §153A-435, waiving sovereign and governmental immunity for applicable claims alleged herein.[3]

14. Upon information and belief, Defendants should be prevented from relying upon,

---

[2] Pursuant to N.C. Gen. Stat. §160A-485, a city waives its governmental immunity from civil liability in tort, to the extent of insurance coverage purchased.

[3] N.C. Gen. Stat. §115C-42 provides that a board of education waives its governmental immunity, to the extent it has purchased liability insurance covering claims for damages arising from the negligence or wrongful acts of the board, or its agents and employees, acting within the scope of their duties.

benefitting from, or invoking any purported non-waiver endorsement. Their attempt to do so should be barred under the doctrine of collateral estoppel and because it violates the guarantees of equal protection.[4]

15. Upon information and belief, at all times relevant to this action, Defendants maintained one or more policies of liability insurance, and/or participated in a governmental risk pool, that provides coverage for the acts and omissions alleged in this Complaint. Accordingly, Defendants have waived governmental immunity to the extent of such coverage and may be held liable for the damages alleged herein.

16. At all times relevant to this action, Defendants acted outside the scope of their official duties, in violation of clearly established statutory and constitutional rights. The individual Defendants' acts and omissions were intentional, willful, wanton, malicious, and undertaken in bad faith, and were not discretionary acts performed in good faith within the scope of lawful authority. Accordingly, public official immunity does not apply to bar Plaintiff's claims.[5]

17. The Superior Court of the North Carolina General Court of Justice holds jurisdiction over this matter, pursuant to North Carolina Gen. Stat. §7A-240, §7A-243 and §§1-75.4, as the amount in controversy exceeds $25,000.00.

18. Venue is proper against Defendants in Mecklenburg County pursuant to N.C. Gen. Stat. § 1-82, as said county is the county in which the events giving rise to Plaintiff's claims arose.

## **NATURE OF THE CASE**

19. This is a civil action arising from acts of negligence, intentional misconduct, and violations of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., committed against a minor child in a public-school setting.

20. The action is brought by Ashley Bolton, Mother and Guardian ad Litem of her son, the minor child at issue, for injuries, damages, and violations of his legal and civil rights.

21. At the time of the attack, minor child was an eighth grader attending Renaissance West Steam Academy.

22. On or about October 27, 2025, minor child suffered physical injuries, emotional distress,

---

[4] Equal protection is secured by the Fourteenth Amendment to the United States Constitution, and Article I, Section 19 of the North Carolina Constitution.

[5] Under North Carolina law, public official immunity does not shield public officials or employees from liability for acts that are malicious, corrupt, outside the scope of their official authority, or performed with deliberate indifference or reckless disregard for the rights and safety of others. Such immunity is further unavailable where the conduct at issue involved intentional acts, gross negligence, or a conscious and reckless disregard for the safety and rights of a minor child.

Page 4 of 38

and other damages as a result of being attacked by Defendant Sanders Fairly, who was, at all relevant times, employed as a Vice Principal at Renaissance West STEAM Academy.

23. The attack occurred on the campus of Renaissance West STEAM Academy, located at 3241 New Renaissance Way, Charlotte, NC 28208, in Mecklenburg County. It involves intentional and/or reckless conduct by Defendant Fairly, that was unreasonable, excessive, and wholly inconsistent with the responsibilities and authority of a school administrator.

24. Defendant Fairly's conduct constitutes a breach of the duty to ensure the safety for the students under his charge.

25. At the time of the incident, minor child was present on school grounds under circumstances giving rise to a duty of care owed to him.

26. At all times relevant to this action, minor child, was a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

## FACTUAL BACKGROUND

27. On or about October 27, 2025, Jane Doe, a teacher approached minor child regarding headphones he was wearing, in contravention to a school policy.

28. When minor child admitted to wearing the headphones in violation of the policy, the teacher called Defendant Fairly.

29. Upon information and belief, Defendant Fairly told minor child he was suspended for three (3) days and ordered him to the principal's office.[6]

30. As captured by the school's surveillance video:

(i) Minor child turned around to face Defendant Fairly;

(ii) Defendant Fairly violently, and without warning, grabbed minor child and turned him around so that he was holding his body into his chest in a bear hug;

(iii) Defendant Fairly attempts to use his left fist to punch minor child on his left side;

(iv) Defendant Fairly violently attacks minor child, by using the full weight of his body to bring him to the floor;

---

[6] This exchange is captured on video, but there is no audio. Plaintiff's attorney and guardian have viewed the video three (3) times, but Defendants have refused to release the video to Plaintiff or Plaintiff's counsel.

(v) Defendant Fairly then sits on top of minor child, holding him down onto the floor.

(vi) While sitting on minor child's back, Defendant Fairly picks him up by his shoulders with both hands, and slams his head face first, into the concrete floor.

31. Further captured by the school's security cameras, is another CMS Defendant employee witnessing the event, and screaming at Defendant Fairly to stop.

32. Defendant Fairley ignored the staff member screaming at him and continued to hold and assault minor child.

33. At some point thereafter, minor child's mother Ashley Bolton received a frantic call instructing her to come to the school immediately.

34. Upon arrival, K.B. was in the office with Defendant McDaniel.

35. Defendant McDaniel provided that K.B. had been "restrained" by Defendant Fairly, following K.B. being "verbally aggressive when asked for his headphones."

36. When Mother asked about the knot on K.B.'s forehead, Defendant McDaniel stated, "he was leaning against the window in my office."

37. Defendant McDaniel suspended K.B. for possession of the headphones and provided Mother with documentation to that effect.[7]

38. Ms. Bolton took her son to the emergency room where he was diagnosed with a traumatic brain injury, two (2) corneal abrasions (one abrasion in each eye), and a large contusion on his forehead.

39. Upon information and belief, an employee of CMS Defendant at Renaissance, made an incident report to Defendant Nicole Coleman of the Charlotte-Mecklenburg Police Department, the same day of the attack. **(Exhibit A).**

40. Upon information and belief, Defendant Coleman had the authority to investigate and charge Defendant Fairley with a crime. But instead, she showed a deliberate indifference to the minor child, the video evidence and her duties, by ignoring the facts and stating she found minor child to be "the initial aggressor," and "both parties were at fault," thereby refusing to pursue charges against Defendant Fairley.

41. Upon information and belief, on or about October 28, 2025, Defendant McDaniel held a meeting to discuss the attack, at which multiple staff members were present.

42. During the meeting, Defendant McDaniel informed those in attendance, that on the day of

---

[7] It should be noted that K.B. was not using the headphones but rather had them around his neck inside of his coat.

the attack, minor child "injured himself" in her office, by "hitting his head on the window" repeatedly, while waiting for his mother to arrive.

43. Upon information and belief, Defendant McDaniel obstructed justice by intentionally, knowingly, and with malice, telling her staff to perpetuate a false cause for minor child's injuries, which she knew or should have known, was completely untrue.

44. Upon information and belief, Defendant Officer Coleman obstructed justice by intentionally, knowingly, and with malice, refusing to charge and arrest Vice Principal Fairley for assaulting minor child and causing injury, which she knew or should have known, occurred.

45. Following the attack of her son by Defendant Fairley, minor child's mother requested that a safety plan be put in place to protect her son from Defendant Fairley.

46. With righteous indignation, Defendant McDaniel developed a "safety plan" that set forth what the minor child could and could not do and failed to address any of the safety concerns created by the actions of Defendant Fairley. The plan also failed to address how she or other employees and agents of CMS Defendants, would ensure minor child's safety moving forward.

47. The safety plan primarily consisted of instructions for minor child and his mother to refrain from discussing the attack at school.

48. This alleged "safety plan" and the lack of accountability, show Defendant McDaniel's deliberate indifference for the safety of minor child.

49. The conduct of CMS and CMPD Defendants, particularly Defendants McDaniel, Fairly, and Coleman, underscores a troubling disregard for legal and ethical standards, including but not limited to threats to prolong minor child's suffering unnecessarily, by ignoring evidence of abuse, and disregarding his rights and injuries, in a way that favored the abusive party.

50. Defendant McDaniel and Defendant Coleman's roles in perpetuating the mismanagement of the truth includes failing to act on clear video evidence of abuse and lying in meetings to create an organized and succinct lie for authorities and the minor child's family, moving forward, with no regard for the minor child's welfare.

51. Despite repeated attempts to secure protection and justice for the minor child, including a distressing meeting with Mother and Defendant McDaniel, where mother was assured of various safety measures (that never happened), the systemic response was inadequate. Defendants maintained their refusal to act, despite the immediate and ongoing risk to the minor child's safety and well-being.

52. The culmination of these efforts and the systemic failures to adequately protect the minor child, led to the minor child experiencing high levels of fear and anxiety at school, and at home in anticipation of returning to school.

## COUNT I
## ASSAULT AND BATTERY
### (As to Defendant Sanders Fairley)

53. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 52 above, as if fully set forth herein.

54. Defendant Sanders Fairley intentionally, willfully, and without legal justification assaulted and battered K.B., a minor child.

55. As captured by CMS surveillance video, Defendant Fairley violently grabbed the minor child without warning, attempted to strike him with a closed fist, forcefully took him to the ground using the full weight of his body, restrained him on the floor, and slammed the minor child's head face-first into a concrete surface.

56. Defendant Fairley's conduct was intentional, excessive, malicious, and wholly disproportionate to any alleged disciplinary issue, in direct violation of CMS discipline and restraint policies, which prohibit physical force except as a last resort to prevent imminent danger or harm.

57. As a direct and proximate result of Defendant Fairley's assault and battery, minor child suffered severe physical injuries, including but not limited to:

(a) a traumatic brain injury;

(b) corneal abrasions to both eyes;

(c) a large contusion to his forehead;

(d) emotional distress; and,

(e) ongoing psychological harm.

58. The unethical conduct and unsubstantiated actions of Defendant Fairley, ratified by the inaction and negligent breaches of duty by CMS and CMPD Defendants, minor child has suffered severe and ongoing emotional distress, including a loss of capacity for the enjoyment of school and learning, along with consequential damages resulting therefrom.

59. Defendant's actions were intentional, willful, and without provocation constituting both assault and battery under N.C. Gen. Stat. §14-33.

60. As a direct and proximate result of Defendant Fairley's conduct, the minor child suffered bodily injury, emotional distress, humiliation, and economic damages in excess of $25,000.00.

61. Plaintiff is entitled to all compensatory and special damages available and allowable under the laws of the State of North Carolina, in an amount in excess of twenty-five thousand dollars ($25,000.00), to be determined by the enlightened conscious of the jury.

## COUNT II
## NEGLIGENCE and GROSS NEGLIGENCE
### (As to CMS Defendants)

62. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 61 above, as if fully set forth herein.

63. CMS Defendants owed the minor child, and the other students at Renaissance, a duty of reasonable care, to provide a safe educational environment, to supervise students appropriately, and to adhere to CMS policies governing discipline, de-escalation, and restraint.

64. CMS Defendants have a duty to Plaintiff / minor child, to take all reasonable actions, measures and steps, to ensure Plaintiff's safety and well-being, including to prevent minor child from being attacked by any persons, including employees and agents of Defendants.

65. CMS discipline and restraint policies require that physical restraint be used only when necessary to prevent imminent danger, prohibit punitive or retaliatory force, and mandate the use of nonviolent de-escalation techniques.

66. Defendants and their agents had complete control over the minor child's physical and emotional welfare while he was at Renaissance.

67. Defendants further owed Plaintiff, a minor child, a special duty of care, in addition to a duty of ordinary care, as Defendants knew or should have known, that minor child is a "qualified individual with a disability."

68. Defendant Fairley's conduct violated these policies and constitutes negligence and gross negligence.

69. Upon information and belief, Defendants had a duty to warn police and child welfare authorities, of any assaults or crimes that came to their attention and intentionally protect minor child at all times he was at Renaissance.

70. CMS Defendants, including Defendant McDaniel and, upon information and belief other CMS staff and administrators, were further grossly negligent, asserting wanton conduct with

a conscious and reckless disregard for the rights and safety of Plaintiff, by:

(a) Failing to properly monitor and or supervise Defendant Fairley;

(b) Failing to intervene in the assault against minor child;

(c) Failing to monitor for violence committed by Defendant Fairley, and failing thereafter to reveal such facts to the police, and/or law enforcement agencies;

(d) Failing to implement and/or enforce, policies and procedures to prevent assault, physical and emotional abuse upon children, and criminal actions;

(e) Failing to protect the minor child, against the assault by Defendant Vice Principal Fairley;

(f) Failing to report the incident accurately, and in fact intentionally lying to protect Defendant Fairley, instead of seeking the truth and protection of the minor child; and,

(g) Failing to implement a meaningful safety plan following the attack, to give the minor child assurances of safety upon his return to classes; and,

(h) Other acts of gross negligence.

71. Defendants' acts and omissions demonstrate a conscious and reckless disregard for the safety and welfare of the minor child and were a proximate cause of the injuries and damages he then suffered and continues to suffer.

72. The unethical conduct and unreasonable actions of CMS Defendants, ratified by the inaction and negligent and grossly negligent breaches of duty by CMS and CMPD Defendants, caused minor child to suffer severe and ongoing emotional distress, including a loss of trust of those in place to educate and protect him, and the capacity for the enjoyment of school and learning, and consequential damages resulting therefrom.

73. As a direct, proximate and foreseeable result of the negligent and grossly negligent acts, conduct and omissions, conducted by CMS Defendants with malice, committed with a conscious and intentional disregard of and indifference to the rights and safety of the Plaintiff / minor child, minor child was violently attacked, assaulted and sustained severe and permanent injuries.

74. Plaintiff is entitled to all damages available and allowable under the laws of the State of North Carolina, in an amount in excess of twenty-five thousand dollars ($25,000.00), to be determined by the enlightened conscious of the jury.

## COUNT III
## NEGLIGENCE and GROSS NEGLIGENCE
### (As to CMPD Defendants)

75. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 74 above, as if fully set forth herein.

76. Defendant Officer Nicole Coleman was, at all times relevant, a sworn law enforcement officer employed by the Charlotte-Mecklenburg Police Department, and acting within the course and scope of her employment with the City of Charlotte.

77. At all relevant times, Defendant Coleman was acting under color of state law and pursuant to duties assigned to CMPD officers responding to incidents occurring on Charlotte-Mecklenburg Schools' property.

78. Defendant Officer Coleman owed a duty to exercise reasonable care in the performance of her law enforcement duties, including but not limited to the duty to conduct a fair and impartial investigation, to evaluate evidence objectively, to protect minor victims of violent crime, to enforce the criminal laws of the State of North Carolina, and to act in accordance with CMPD policies, training, and professional standards.

79. Defendant Officer Coleman further owed a heightened duty of care when responding to allegations of a violent assault against a minor child on school grounds, including a duty to properly assess video evidence, interview witnesses, preserve evidence, and pursue criminal charges where probable cause exists.

80. Defendant Officer Coleman breached these duties by acts and omissions including, but not limited to:

(a) Failing to conduct a reasonable and impartial investigation into the violent assault of a minor child;

(b) Ignoring or minimizing clear video evidence documenting the assault by Defendant Fairley;

(c) Intentionally mischaracterizing the incident by falsely concluding that the minor child was the "initial aggressor" and that "both parties were at fault," despite evidence to the contrary; Further mischaracterizing to another CMPD employee that the child tried to "swing on" Defendant Fairly.

(d) Failing and refusing to seek criminal charges or arrest Defendant Fairley, despite the existence of probable cause;

Page 11 of 38

(e) Failing to protect the minor child as a victim of violent crime;

(f) Failing to comply with CMPD standards, training, and professional obligations governing investigations involving minor children and school-based incidents; and

(g) Colluding with CMS employees to perpetuate a false story about how the minor child's injuries occurred.

81. Defendant City of Charlotte owed a duty to the minor child, to exercise reasonable care in the training, supervision, retention, and discipline of CMPD officers, including Defendant Coleman, and to ensure that officers assigned to school-related duties act lawfully, competently, and in accordance with established policies and constitutional standards.

82. Defendant City of Charlotte breached its duties by failing to adequately train and supervise CMPD officers assigned to school-based incidents regarding the investigation of staff-on-student violence, the handling of video evidence, the protection of minor victims, and the avoidance of bias in favor of school administrators.

83. As a direct and proximate result of the negligence of Defendant Officer Coleman and Defendant City of Charlotte, the minor child was denied the protection of the law, denied access to justice, exposed to continued emotional harm and fear, and suffered additional damages beyond those caused by the initial assault, including severe emotional distress, anxiety, and trauma related to the lack of accountability and protection.

84. Defendant City of Charlotte is vicariously liable for the negligent acts and omissions of Defendant Officer Coleman under the doctrine of *respondeat superior*, and directly liable for its own negligent training, supervision, and retention.

85. Defendant Officer Coleman's conduct constituted gross negligence in that it demonstrated a willful, wanton, and reckless disregard for the safety, rights, and welfare of a minor child, who had been violently assaulted on school property.

86. Despite having actual knowledge of the severity of the assault, the known vulnerability of the victim, and the existence of surveillance video documenting criminal conduct, Defendant Officer Coleman consciously and deliberately chose to disregard the evidence, abandon her investigative responsibilities, and colluded to shield the perpetrator from accountability.

87. Defendant Officer Coleman's actions were not the result of mere mistake or oversight, but rather a reckless indifference to her duties as a law enforcement officer and to the foreseeable harm that would result to the minor child from her refusal to act.

88. Defendant City of Charlotte was grossly negligent in failing to prevent such conduct by:

(a) Allowing CMPD officers to operate in school environments without adequate safeguards against bias or undue deference to school administrators;

(b) Failing to enforce accountability measures for officers who ignore evidence of violent crime;

(c) Failing to train officers on the legal and ethical obligations owed to minor victims of assault; and,

(d) Failing to correct patterns or practices of inadequate investigation in school-based incidents.

89. The gross negligence of Defendant Officer Coleman and Defendant City of Charlotte was a proximate cause of the minor child's continued suffering, fear of returning to school, emotional trauma, and the erosion of trust in institutions charged with protecting children.

90. Because Defendant Officer Coleman acted with malice, bad faith, and reckless disregard for the rights of the minor child, public official immunity does not apply.

91. Further, to the extent Defendant City of Charlotte asserts governmental immunity, such immunity is waived by the purchase of liability insurance and/or participation in a risk pool and is otherwise inapplicable due to the City's own grossly negligent conduct.

92. It was reasonably foreseeable, that a law enforcement officer's refusal to investigate and charge a school administrator for violent assault, would embolden further misconduct, silence witnesses, re-traumatize the victim, and place the minor child at ongoing risk of harm.

93. Defendants' acts and omissions demonstrate a conscious and reckless disregard for the safety and welfare of the minor child and were a proximate cause of the injuries and damages he continues to suffer.

94. The unethical conduct and unreasonable actions of CMPD Defendants, ratified by the inaction and negligent breaches of duty by CMPD and CMS Defendants, caused minor child to suffer severe and ongoing emotional distress, including a loss of trust of those in place to educate and protect him, as well as the capacity for the enjoyment of school and learning, and consequential damages resulting therefrom.

95. Plaintiff is entitled to all damages available and allowable under the laws of the State of North Carolina, in an amount in excess of twenty-five thousand dollars ($25,000.00), to be determined by the enlightened conscious of the jury.

## NEGLIGENT HIRING, RETENTION, SUPERVISION and TRAINING
### (As to CMS Defendants)

96. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 95 above, as if fully set forth herein.

97. At all times relevant, The Board had a duty of reasonable care, to hire, train, retain and supervise their employees, including Defendants McDaniel and Fairley, so they could be entrusted with the safety and security of the minor children in their care.

98. CMS Defendants owe a duty to exercise reasonable care in the hiring, training, supervision, and retention of administrators and staff, including Defendants Fairley and McDaniel.

99. CMS Defendants knew or should have known of the risk posed by Defendant Fairley's position of authority over vulnerable students and failed to ensure adequate training and enforcement of CMS discipline and restraint policies.

100. Upon information and belief, CMS Defendants breached their duty in hiring, retaining and supervising Defendants McDaniel and Fairly, in the following respects:

    a. The Board knew or should have known that upon information and belief, Defendants have previously engaged in improper decision making during their care of minor children;

    b. The Board failed to properly supervise Defendants;

    c. Upon information and belief, The Board failed to discipline, reprimand or terminate Defendants, in any meaningful way; and,

    d. In other respect to be proven through discovery, and at trial.

101. Upon information and belief, CMS Defendants breached their duty in hiring, retaining and supervising John and Jane Doe Defendants, in the following respects:

    a. CMS Defendants knew or should have known, that upon information and belief, Defendant(s) Doe, have a propensity for negligence and improper decision making, particularly in the responsibility to protect minor children under their care, for fear of retaliation by their superiors: Defendants McDaniel and Fairley;

    b. Upon information and belief, CMS Defendants' failure to properly supervise Defendants McDaniel and Fairley, result in subordinate staff operating with reluctance of reporting violations, for fear of being able to maintain a non-hostile

workplace, free of retaliation;

c. Upon information and belief, CMS Defendants failed to conduct a full and proper investigation of Defendants McDaniel and Fairley, following the complaints as alleged by Mother and minor child;

d. Upon information and belief, CMS Defendants, failed to terminate Defendants McDaniel and Fairley, or any member of the staff, involved in the mismanagement of minor children or any investigative efforts, when they knew or should have known, that care of the minor child did not meet CMS standards for keeping students safe under the requirements under North Carolina law; and,

e. In other respects to be proven through discovery, and at trial.

102. Following the attack, CMS Defendants further failed to supervise, discipline, or remove Defendant Fairley, and instead engaged in conduct designed to conceal the incident and silence discussion, thereby exacerbating the harm and placing the minor child at continued and ongoing risk of harm.

103. Defendants owe a duty to Plaintiff / minor child, to take all reasonable actions, measures, and steps, to ensure minor child's safety and well-being, by hiring suitable, competent staff, who understand the importance of safeguarding particularly vulnerable students, like the minor child at issue in this action.

104. Defendants systematically breached their duty of care to Plaintiff / minor child, by:

(a) Failing to timely and properly educate and train employees, agents and/or administrators, on child supervision, the risks of assault, and preventing and detecting child abuse;

(b) Failing to establish effective or enforce, and adequate policies and procedures designed to monitor the safety of children, including steps to detect, prevent, and acknowledge abuse upon a child;

(c) Placing Defendant Fairley in a position where he had unrestricted and unsupervised access to minor children under The Board's care;

(d) Failing to provide a safe environment where children are not subjected to abuse;

(e) Hiring a principal who fails to take appropriate steps to protect the children for which she and the Defendants are responsible; and,

(f) Other acts of negligence to be proven through discovery, and at trial.

105. Defendants owe Plaintiff / minor child, a duty of reasonable care, because they hold themselves out to the public, the State of North Carolina and its agencies, as an entity that is safe for children, qualified to provide educational instruction and other services for all children.

106. Defendants promoted their facility as being a safe place for children to learn but allowed the minor child to be attacked by a Vice Principal, and further encouraged employees to falsify statements and information regarding the unwarranted attack, to prevent justice from being served.

107. Plaintiff / minor child's care and welfare were entrusted to Defendants, because he was under their daily care and supervision on property owned, operated and/or staffed by Defendants.

108. The unethical conduct and unreasonable actions of CMS Defendants, ratified by the inaction and negligent breaches of duty by CMS and CMPD Defendants, caused minor child to suffer severe and ongoing emotional distress, including a loss of his sense of safety and security, in place charged with educating and protecting him.

109. Plaintiff is entitled to all damages available and allowable under the laws of the State of North Carolina, in an amount in excess of twenty-five thousand dollars ($25,000.00), to be determined by the enlightened conscious of the jury.

**COUNT V**
**NEGLIGENT HIRING, RETENTION, SUPERVISION and TRAINING**
**(As to CMPD Defendants)**

110. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 109 above, as if fully set forth herein.

111. At all times relevant, The City had a duty of reasonable care, to hire, train, retain and supervise their employees, including Defendant Officer Coleman, to be entrusted with the safety and security of the minor children in her care, while appointed as a School Resource Officer, collaboratively with CMS Defendants.

112. CMPD Defendants owe a duty, to exercise reasonable care in the hiring, training, supervision, and retention of officers including Defendant Coleman.

113. CMPD Defendants knew or should have known, of the risk posed by Defendant Coleman, when placed in a position of authority over vulnerable CMS students, and failed to ensure adequate training and enforcement of CMS and CMPD discipline and restraint policies.

114. Upon information and belief, CMPD Defendants breached their duty in hiring, retaining and supervising Defendant Nicole Coleman, in the following respects:

   a. CMPD knew or should have known, that upon information and belief, Defendants have previously engaged in improper decision making during their care of minor children;

   b. The City and The Board failed to properly supervise Defendant Coleman;

   c. Upon information and belief, The City failed to discipline or reprimand Defendant Coleman in any meaningful way; nor was she terminated;

   d. Selecting / appointing a school resource officer, who failed to take appropriate steps to protect minor child from Defendant Fairley, and working rather to protect Defendants McDaniel and Fairley from appropriate and lawful reprimand, for which she is expressly responsible; and,

   e. Defendant Coleman knew or should have known, that upon information and belief, CMS Defendants would have a propensity for negligence and improper decision making, for fear of retaliation by their superiors: Defendants McDaniel and Fairley;

   f. CMPD Defendants allowed Defendant Coleman to stand firm in her refusal to watch the available surveillance footage, or conduct a full and proper investigation of Defendants McDaniel and Fairley, following the assault by Defendant Fairley;[8]

   g. Upon information and belief, CMS and CMPD Defendants failed to reprimand or terminate Defendant Officer Coleman, allowing for gross mismanagement of the investigation and minor child at issue in this case, when they knew or should have known, did not meet CMS nor CMPD standards for keeping students safe under North Carolina law; and,

   h. In other respects, to be proven through discovery, and at trial.

115. Following the attack, CMPD Defendants further failed to supervise, discipline, or remove Defendant Coleman, instead allowing her to engage in conduct designed to conceal the incident and silence discussion, thereby exacerbating the harm and placing the minor child at continued and ongoing risk of harm.

116. CMPD Defendants owe a duty to Plaintiff / minor child, to take all reasonable actions, measures, and steps, to ensure minor child's safety and well-being, by hiring suitable,

---

[8] CMS's failure to discipline or meaningfully investigate Defendant Fairley following the assault, constitutes ratification of unconstitutional conduct. See *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987).

competent school resource officers, who understand the importance of safeguarding particularly vulnerable students, like the minor child at issue in this case.

117. Defendants systematically breached their duty of care to Plaintiff / minor child, by:

(a) Failing to timely and properly educate and train Officer Coleman, on the risks of assault, as well as preventing and detecting abuse upon the children;

(b) Failing to provide a safe environment where children are not subjected to abuse, and if they are, law enforcement protection; and,

(c) Other acts of negligence to be proven through discovery, and at trial.

118. CMPD Defendants owe Plaintiff / minor child, a duty of reasonable care, because they hold themselves out to the public, the State of North Carolina and its agencies, as an entity whose presence on campus, makes CMS schools a safer place for Mecklenburg County's most vulnerable citizens.

119. Upon information and belief, CMPD Defendants promote their officers, as being a necessary safety measure for CMS students, yet the actions and presence of Defendant Coleman, allowed the minor child to be attacked by a Vice Principal, encouraged employees to falsify statements and information regarding the unwarranted attack, and prevented justice from being served.

120. The unethical conduct and unreasonable actions of Defendant Coleman, ratified by the inaction and negligent breaches of duty by CMS and CMPD Defendants, caused minor child to suffer severe and ongoing emotional distress, including a loss of his sense of safety and security, in a place charged with educating and protecting him, by a police officer promoted as a 'safe space' for Mecklenburg County residents.

121. Plaintiff / minor child is entitled to all damages available and allowable under the laws of the State of North Carolina, jointly and severally, in an amount in excess of twenty-five thousand dollars ($25,000.00), to be determined by the enlightened conscious of the jury.

## COUNT VI
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (As to Defendants Fairley, McDaniel, and Jane/John Doe(s))

122. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 121 above, as if fully set forth herein.

123. Defendant Fairley engaged in extreme and outrageous conduct, violently, without cause or provocation, assaulting minor child, and ignoring staff's pleas to stop.

124. Defendant McDaniel engaged in extreme and outrageous conduct, by lying about the cause of minor child's injuries, ultimately attempting to blame the child, and implementing a so-called "safety plan" that punished the victim and his family, rather than addressing the source of real danger.[9]

125. Such conduct was intended to cause, and did cause, severe emotional distress to the minor child and his mother, including fear, anxiety, humiliation, and psychological trauma related to returning to school and encountering the individuals responsible for his injuries.

126. Available documents to support the statements of Plaintiff / minor child, include surveillance video capturing the entirety of the event as described above, medical records of the minor child, the alleged "safety plan," and transfer documents executed as to minor child.

127. As a direct and proximate result of Defendants' failure to monitor and investigate the complaints of minor child as to the unethical conduct and unsubstantiated assault by Defendant Fairly, Plaintiff / minor child has suffered severe and ongoing emotional distress, psychological pain and suffering, and loss of capacity for the enjoyment of school and learning, along with consequential damages resulting therefrom.

128. Plaintiff is entitled to all compensatory and special damages available and allowable under the laws of the State of North Carolina, in an amount in excess of twenty-five thousand dollars ($25,000.00), to be determined by the enlightened conscious of the jury.

## COUNT VII
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (As to All Defendants)

129. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 128 above, as if fully set forth herein.

130. Defendants negligently engaged in conduct that they knew or should have known, would cause severe emotional distress to a minor child, including but not limited to:

(a) violent physical assault;

(b) concealment of abuse;

(c) refusal to protect him; and,

---

[9] Defendants' acts and omissions, including the failure to follow or consider minor child's IEP and Section 504 Plan, and the use of force and punitive measures rather than disability-appropriate interventions, constitute a failure to provide reasonable accommodations, intentional discrimination, and deliberate indifference to his federally protected rights under the ADA and Section 504.

Case 3:26-cv-00245-MEO-DCK    Document 1-1    Filed 03/26/26    Page 24 of 43

(d) placing conditions on his silence as part of a purported safety plan.[10]

131. The emotional distress suffered by the minor child and his mother was nor only foreseeable, but severe, and proximately caused by Defendants' intentional acts and omissions.

## COUNT VIII
## CIVIL CONSPIRACY
### (As to CMS Defendants and CMPD Defendant Coleman)

132. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 131 above, as if fully set forth herein.

133. CMS Defendants and Defendant Officer Nicole Coleman, acted in concert and pursuant to a common plan to conceal the truth of the assault, mischaracterize the cause of the minor child's injuries, and protect Defendant Fairley from accountability.

134. This conspiracy included false statements that the child injured himself, deliberate misrepresentation of video evidence, refusal to pursue criminal charges, and coordinated efforts to silence staff and the family.

135. Overt acts were taken in furtherance of the conspiracy, resulting in injury to the minor child, and deprivation of his rights and protections under the law.

136. Plaintiff is entitled to all compensatory and special damages available and allowable under the laws of the State of North Carolina, in an amount in excess of twenty-five thousand dollars ($25,000.00), to be determined by the enlightened conscious of the jury.

## COUNT IX
## FAILURE TO PROTECT / DELIBERATE INDIFFERENCE TO STUDENT SAFETY
### (As to CMS Defendants)

137. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 136 above, as if fully set forth herein.

138. CMS Defendants had actual knowledge of the assault, the ongoing risk posed by Defendant Fairley, and the minor child's fear and trauma.

139. Despite repeated requests by the child's mother for protection, CMS Defendants acted with deliberate indifference, by:

---

[10] CMS policies, procedures, and training require school administrators, including principals and vice principals, to comply with federal disability-rights laws and to implement reasonable accommodations, positive behavioral interventions, and de-escalation strategies when interacting with students with disabilities.

(a) Failing to implement any meaningful safeguards;

(b) Failing to remove or restrict Defendant Fairley from the minor child; and,

(c) Issuing a "safety plan" that focused on directing and restricting the minor child and his mother from discussing, rather than preventing further harm.

140. These failures violated CMS student-safety obligations, and directly contributed to the minor child's continued fear, distress, and educational harm.

141. Plaintiff is entitled to all compensatory and special damages available and allowable under the laws of the State of North Carolina, in an amount in excess of twenty-five thousand dollars ($25,000.00), to be determined by the enlightened conscious of the jury.

## COUNT X
## OBSTRUCTION OF JUSTICE, FRAUD and COLLUSION
### (As to CMS Defendant McDaniel and CMPD Defendant Coleman)

142. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 141 above, as if fully set forth herein.

143. Upon information and belief, Defendant McDaniel intentionally, knowingly and maliciously, made false statements to staff and others regarding the cause of the minor child's injuries, instructing and encouraging the perpetuation of a fabricated narrative that the child injured himself.

144. Defendant Officer Coleman, despite having authority and a duty to investigate and pursue criminal charges, deliberately ignored clear video evidence, falsely labeled the minor child as the "initial aggressor," and refused to arrest or charge Defendant Fairley.

145. In essence, Defendants McDaniel and Officer Nicole Coleman, engaged in acts that obstructed justice by intentionally, knowingly and with malice, falsifying, mischaracterizing, and suppressing material evidence of Defendant Fairley's assault on the minor child.

146. CMS's own discipline and safety policies, prohibit corporal punishment and require that discipline be administered in safe, lawful, and nonviolence-based ways, with the overarching goal of "a safe and orderly learning environment," and the promotion of student safety, dignity, and respect.

147. Corporal punishment is forbidden, and restraint must be used only where lawful and necessary to prevent imminent harm, under training and regulatory standards.

148. CMS policy expressly forbids life-threatening or medically contraindicated physical

restraint, and mechanical or aversive interventions that compromise student health and safety.[11]

149. Evidence shows that only certified personnel trained in crisis interventions may consider supine restraint, and only where required to provide safety to the student or others; no such conditions existed here.

150. The assault by Defendant Fairley violated CMS standards in every respect.

151. Upon information and belief, CMS discipline protocols require progressive, nonphysical responses, and emphasize student safety, counseling, mediation, and nonphysical interventions. This is especially true for minor violations such as possession of headphones resting on your neck, versus using them to ignore student instruction.

152. Despite video evidence clearly documenting the assault and unlawful application of force in violation of CMS discipline and restraint policies, Defendant Principal McDaniel, knowingly and maliciously disseminated false narratives as to the cause of the minor child's injuries, including telling her staff and the minor child's mother, that he "injured himself" by "hitting his head on the window" in her office, while waiting for his mother, statements she knew or should have known, were completely false.

153. Upon information and belief, Defendant Officer Nicole Coleman, a sworn law enforcement officer assigned as a CMPD School Resource Officer[12], was presented with evidence and information sufficient to support criminal investigation, and probable cause to charge Defendant Fairley with assault. Instead, Defendant Coleman deliberately ignored clear video evidence, improperly credited deceptive accounts from school officials, and falsely concluded that the minor child was the "initial aggressor" and that "both parties were at fault," thereby refusing to pursue charges.

154. Under North Carolina law, School Resource Officers must comply with statutory training requirements and carry out duties that include school safety, emergency preparedness, and response.

155. School Resource Officers employed through CMPD or contracted with CMSPD, are expected to serve as law enforcement officers within schools, enforcing local, state, and federal laws, acting as liaisons with stakeholders, and providing security and crime prevention guidance.

---

[11] Restraint that is life-threatening, medically contraindicated, or otherwise outside the narrow, statutory permissible uses of physical restraint, is governed by strict procedural requirements and may only be applied by personnel trained in crisis intervention.

[12] As defined under North Carolina law, a law enforcement officer assigned at least 20 hours per week in a school to assist with school safety, security, emergency response, and related duties.

156. Upon information and belief, CMPD Defendant Officer Coleman is explicitly responsible for lawful response to criminal acts.

157. A CMPD officer presented with credible evidence of a violent assault on a minor child, has a duty to investigate thoroughly, preserve evidence, and pursue appropriate charges where probable cause exist.

158. These actions by CMS Defendant McDaniel and CMPD Defendant Coleman, constitute obstruction of justice, including fabrication of false narratives, suppression of exculpatory and inculpatory evidence, and interference with lawful investigation and prosecution, all of which are contrary to law and public policy.[13]

159. Defendant's conduct also interfered with the minor child's ability to obtain legal redress and constitutes a deprivation of his rights under state and federal law. Defendants' conduct violated these mandatory statutory and policy requirements.[14]

160. Defendant Fairley applied force far beyond what is permitted, including violent restraining actions not authorized under CMS policies or North Carolina law.

161. Defendant McDaniel's failure to accurately report or investigate the assault, her instruction to staff to perpetuate a false cause of injury, and her creation of a purported "safety plan" that effectively punished the minor child and failed to address his safety, demonstrate a breach of legally mandated requirements.[15]

162. Defendant Officer Nicole Coleman's refusal to conduct an appropriate investigation and refusal to pursue charges when there was probable cause, constitutes negligence per se in failing to comply with law enforcement obligations to investigate criminal conduct and protect vulnerable victims.

163. As a result of these statutory and policy violations, which were designed to prevent the type of harm suffered by the minor child, Defendants are liable for negligence per se because:

(a) The statutes and policies were intended to protect a class of individuals of which the minor child is a member (students at CMS);

(b) The minor child's injuries are the type the statutes and policies were designed to

---

[13] As set forth in the North Carolina Student Rights, Responsibilities and Character Development Handbook and relevant CMS Board policies, the Charlotte-Mecklenburg Board of Education has promulgated standards and procedures to protect students and staff, and to ensure that disciplinary actions are consistent with state law and the safe administration of discipline.

[14] Statutory and regulatory protections are designed to promote student safety and prevent harm.

[15] A CMS administrator presented with video evidence of unlawful force, has a duty to report accurately and to protect student safety in accordance with CMS policies.

prevent; and,

(c) The violation of these statutes and policies proximately caused the minor child's harm.

164. The acts committed by Defendants constitute obstruction of justice, violations of public duties, and further constitute negligence per se and evidence of malice and bad faith, barring the application of public official immunity.

## COUNT XI
### VICARIOUS LIABILITY / RESPONDEAT SUPERIOR
### (As to CMS Defendants and CMPD Defendants)

165. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 164 above, as if fully set forth herein.

166. Upon information and belief, Defendants McDaniel, Fairley and Jane / John Doe(s), were at all times relevant, employed by Charlotte-Mecklenburg Schools, by the Charlotte Mecklenburg Board of Education, in the capacity of the school's Principal, Vice Principal, and various administrative staff members, responsible for the care and custody of minor children for the purpose of education.

167. As agents of CMS, Defendants were acting within the course and scope of employment and agency at the time they negligently failed to provide the expected and applicable protections for minor child's education and safety.

168. CMS and the Board are therefore vicariously liable for the wrongful acts and omissions of their employees, to the extent permitted by North Carolina law and any applicable waiver of immunity.

169. Upon information and belief, Defendant Officer Nicole Coleman, was at all times relevant, employed by Charlotte Mecklenburg Police Department, by the City of Charlotte, in the capacity of a law enforcement officer and School Resource Officer, responsible for the care and custody of minor children for the purpose of safety.

170. As an agent of CMPD, Defendant was acting within the course and scope of employment and agency at the time she negligently failed to provide the expected and applicable protections for minor child's safety.

171. CMPD and the City are therefore vicariously liable for the wrongful acts and omissions of Defendant Officer Coleman, to the extent permitted by North Carolina law and any applicable waiver of immunity.

172. All Defendants are vicariously liable for the negligent acts committed by its employees and agents.

173. Pursuant to the doctrine of respondeat superior, Defendants are vicariously liable for the acts of their employees and agents, and thereby, have breached its respective duties to Plaintiff / minor child.

174. This vicarious breach of duty of care was the direct and proximate cause of injuries sustained by Plaintiff.

175. Plaintiff is entitled to recover from Defendants, jointly and severally, damages in an amount in excess of twenty-five thousand dollars ($25,000.00).

176. Plaintiff is entitled to recover from all Defendants, jointly and severally, punitive damages in an amount in excess of twenty-five thousand dollars ($25,000.00).

## COUNT XII
## PUNITIVE DAMAGES / WILLFUL & WANTON CONDUCT

177. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 176 above, as if fully set forth herein.

178. At all times complained of herein, Defendants' conduct constitutes egregious, reckless, willful and wanton acts of indifference towards Plaintiff, resulting in harm, so as to warrant the imposition of punitive damages pursuant to N.C.G.S. §1D-1.

179. As pled with more specificity, Defendants:

   (a)   Intentionally, recklessly, and in wanton disregard for the safety and well-being of Plaintiff, caused minor child to sustain a traumatic brain injury and related neurological, visual, and emotional impairments, substantially limiting major life activities, and giving rise to this cause of action;

   (b)   Conducted themselves in a reckless manner;

   (c)   Recklessly ignored all of the available information which would have allowed Defendants to administer proper care and assessments, under the circumstances;

   (d)   Failed to adhere to the rules and standards of CMS AND CMPD policies;

   (e)   Failed to take appropriate action to avoid harm to Plaintiff; and,

   (f)   Intentionally provided false statements as to minor child.

180. Defendants are vicariously liable for the egregious, willful, wanton, reckless, and grossly negligent conduct of their employees / agents, by adopting, ratifying, and promoting policy

where teachers and staff are not supervised or held accountable, and students are put in danger.

181. Defendants' adoption, ratification, and promotion of such irresponsible and blatant disregard for known policy, was the direct, proximate, and contributing cause of injuries to Plaintiff.

182. As Defendants McDaniel, Fairly and Coleman are agents of CMS and CMPD Defendants, and were in the performance of work for each, liability of punitive damages is imputed to The Board and The City.

183. Plaintiff is entitled to recover from Defendants jointly and severally, damages in an amount in excess of twenty-five thousand dollars ($25,000.00).

184. Plaintiff is entitled to recover from all Defendants jointly and severally, punitive damages in an amount in excess of twenty-five thousand dollars ($25,000.00).

## FEDERAL CLAIMS
### Pursuant to 42 U.S.C. § 1983

185. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 184 above, as if fully set forth herein.

186. At all times complained of herein, Defendants' conduct was foreseeable, and in willful disregard for the safety of the Minor Child.

187. As pled with more specificity, Defendants:

    (a)    Displayed a willful disregard for the safety and well-being of Plaintiff, causing minor child to sustain a traumatic brain injury and related neurological, visual, and emotional impairments, substantially limiting major life activities, and giving rise to this cause of action;

    (b)    Through their customs and policies, CMS created an opportunity for this assault to occur, and CMS showed deliberate indifference to the safety of the minor child.

    (c)    Failed to respond and/or act upon Defendant Fairley's actions and behaviors, that CMS knew or should have known, and were reasonably foreseeable.

    (d)    Failed to adhere to the rules and standards of CMS AND CMPD policies;

    (e)    Failed to take appropriate action to avoid harm to Plaintiff; and,

(f)    Intentionally provided false statements as to minor child's behavior and the source of minor child's injuries.

188. CMS and CMPD failed to investigate or take appropriate measures to protect a student, leading to an assault, battery, and severe injury to the Minor Child.

189. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights pursuant to 42 U.S.C. § 1983.

## COUNT I
## EXCESSIVE FORCE IN VIOLATION OF THE 14TH AMENDMENT
### (As to Defendant Fairley)

190. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 189 above, as if fully set forth herein.

191. At all relevant times, Defendant Fairley was acting under color of state law as a Vice Principal and employee of Charlotte-Mecklenburg Schools (*"CMS"*).

192. Minor Child is a public-school student, entitled to the protections of the Fourteenth Amendment, including the right to be free from excessive and unreasonable force by school officials.

193. CMS discipline and restraint policies permit physical intervention only when reasonably necessary, only to prevent imminent harm, and only using the least restrictive means necessary, with an express prohibition against:

(a) Punitive force;

(b) Force used in response to verbal or minor rule violations; and,

(c) Techniques that restrict breathing or involve slamming a student's head or body into hard surfaces.

194. Minor Child posed no imminent threat to himself or others and had complied with the teacher's instruction by admitting the policy violation.

195. Despite the absence of any immediate danger, Defendant Fairley:

(a) Seized Minor Child without warning;

Case 3:26-cv-00245-MEO-DCK    Document 1-1    Filed 03/26/26    Page 32 of 43

(b) Restrained him in a bear hug;

(c) Attempted to strike him with a closed fist;

(d) Forced him to the ground using body weight;

(e) Sat on his back; and,

(f) Lifted and slammed Minor Child's head, face-first into a concrete floor.

196. Defendant Fairley's actions were objectively unreasonable, grossly disproportionate, and entirely inconsistent with CMS restraint policies and accepted educational standards.

197. Defendant Fairley, acting under color of state law and in his capacity as Vice Principal at Renaissance West STEAM Academy, used excessive, unreasonable, and objectively unlawful force against minor child, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

198. As captured by CMS surveillance video, Defendant Fairley violently seized the minor child without warning, attempted to strike him, forcibly slammed him to the ground, restrained him with his body weight, and intentionally slammed the child's head face-first into a concrete floor.

199. Defendant Fairley's actions were malicious, punitive, and grossly disproportionate, and violated clearly established constitutional rights of which a reasonable school official would have known.

200. As a direct and proximate result, Minor Child suffered severe physical injuries, including a traumatic brain injury, corneal abrasions, and significant emotional distress.

201. Defendant Fairley is not entitled to qualified immunity because the right of a student to be free from such force, was clearly established at the time of the assault.

202. The minor child posed no immediate threat and was not engaged in violent conduct warranting any use of force.

203. Defendant Fairley is not entitled to qualified immunity.

204. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights, pursuant to 42 U.S.C. §1988.

## COUNT II
## SUBSTANTIVE DUE PROCESS: BODILY INJURY
### (As to Defendant Fairley)

205. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 204 above, as if fully set forth herein.

206. The Fourteenth Amendment further protects a student's fundamental right to bodily integrity.

207. Defendant Fairley's conduct was so brutal, demeaning and harmful, that it shocks the conscience, and constitutes a substantive due process violation.

208. Slamming a child's head into a concrete floor, while restraining him for a non-violent policy violation violates clearly established law.[16]

209. The assault bore no legitimate pedagogical or safety justification and was instead punitive and retaliatory in nature.

210. No reasonable school official could believe such conduct was lawful under CMS policy or constitutional standards.

211. Defendant Fairley acted with deliberate indifference, or worse, to Minor Child's constitutional rights.

212. Defendant Fairley's actions were objectively unreasonable, grossly disproportionate, and entirely inconsistent with CMS restraint policies and accepted educational standards.

213. As a direct and proximate result, Minor Child suffered severe physical injuries, including a traumatic brain injury, corneal abrasions, and significant emotional distress.

214. Defendant Fairley is not entitled to qualified immunity because the right of a student to be free from such force, was clearly established at the time of the assault.

215. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights, pursuant to 42 U.S.C. §1988.

---

[16] Conduct that is "so brutal, demeaning, and harmful as to shock the conscience" is unconstitutional. *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980).

## FAILURE TO INTERVENE
### (As to Jane Doe CMS Employee Witnessing the Assault)

216. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 215 above, as if fully set forth herein.

217. Another CMS employee observed the assault in real time, recognized its unlawfulness, and verbally instructed Defendant Fairley to stop.

218. Despite having the opportunity and authority to intervene or summon immediate assistance, the assault continued.

219. Defendant CMS employee(s) who witnessed the assault, had a realistic opportunity and duty to intervene to prevent further harm to the minor child.[17]

220. The witnessing employee's failure to take effective action contributed to the duration and severity of Minor Child's injuries.

221. Despite observing Defendant Fairley's unlawful use of force and screaming for him to stop, Defendant Fairley continued the assault, while CMS personnel failed to intervene effectively.

222. This failure to intervene violated the minor child's constitutional rights and directly contributed to the severity of his injuries.

223. Defendant Coleman and CMS administrators cannot claim qualified immunity for ratifying or facilitating unlawful conduct after the fact.

224. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights, pursuant to 42 U.S.C. § 1988.

## COUNT IV
## MUNICIPAL LIABILITY (Monell)
### (As to CMS Defendants)

225. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 224 above, as if fully set forth herein.

226. At all relevant times, the Charlotte-Mecklenburg Board of Education maintained policies, customs, practices and/or failures, that were the moving force behind the constitutional

---

[17] Fourth Circuit precedent makes clear that officials who witness constitutional violations and fail to intervene may be held liable. See *Randall v. Prince George's Cnty.*, 302 F.3d 188 (4th Cir. 2002).

violations, including but not limited to:

(a) Inadequate training on lawful restraint and/or use of force and de-escalation;

(b) Tolerance of excessive force by administrators;

(c) Failure to enforce CMS restraint and discipline policies;

(d) Failure to discipline staff who violate restraint policies;

(e) Post-incident practices designed to suppress reporting and accountability;

(e) Custom of minimizing, concealing, or mischaracterizing staff-on-student violence; and,

(f) A practice of retaliating against students and families who report abuse.

227. This policy framework operates across educational administration, discipline, and school-based law enforcement, and includes CMS administrators and assigned School Resource Officers acting jointly.[18]

228. Defendant McDaniel's actions following the assault, including directing staff to perpetuate a false explanation for Minor Child's injuries, and issuing a "safety plan" that restricted the child rather than the aggressor, reflect institutional deliberate indifference.

229. Defendants conduct demonstrates a pattern of prioritizing institutional protection, and deliberate indifference to the constitutional rights of students with disabilities, over student safety.[19]

230. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights, pursuant to 42 U.S.C. § 1988.

## COUNT V
## DENIAL OF ACCESS TO COURTS
### (As to Defendant Officer Coleman)

231. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 230 above, as if fully set forth herein.

---

[18] Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality is liable where constitutional and statutory violations result from official policies, customs, or deliberate indifference to known risks.

[19] The same deliberate indifference that establishes Monell liability also satisfies the intentional discrimination standard required for compensatory damages under Title II of the ADA and §504. See *Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524 (4th Cir. 1998).

232. Defendant Coleman, a CMPD officer acting under color of state law, had access to video evidence conclusively depicting the assault.

233. Upon information and belief, Defendant Coleman refused to watch the video.

234. Defendant Coleman knowingly mischaracterized the evidence, by labeling Minor Child the "initial aggressor," and stating, "both parties were at fault."

235. Defendant Coleman refused to pursue charges or conduct a good-faith investigation, despite clear available evidence of criminal conduct.

236. This deliberate misrepresentation and refusal to act, impeded Minor Child's ability to obtain timely justice and redress, constituting a denial of meaningful access to the courts.

237. Defendant Coleman's conduct was intentional, malicious, and undertaken with deliberate indifference to Minor Child's constitutional rights.

238. Defendant McDaniel knowingly fabricated and disseminated false statements regarding the cause of the minor child's injuries, instructing staff to assert that the child injured himself.

239. Defendant Officer Coleman, acting under color of state law, deliberately ignored video evidence, falsely labeled the minor child as the aggressor, and refused to pursue criminal charges against Defendant Fairley, despite clear probable cause.

240. These acts constituted intentional interference with the minor child's right to access the courts and seek redress and violated clearly established constitutional protections.

241. Intentionally mischaracterizing evidence, suppressing reports, or fabricating explanations to shield an offender, violates constitutional rights and denies access to justice.

242. Defendant Coleman's refusal to act on clear video evidence, coupled with false attribution of blame to Minor Child, falls outside the bounds of discretionary policing.

243. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights, pursuant to 42 U.S.C. §1988.

<u>COUNT VI</u>
### EQUAL PROTECTION (SELECTIVE NON-ENFORCEMENT)
### (As to Defendant Officer Coleman)

244. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 243 above, as if fully set forth herein.

245. Defendant Coleman selectively refused to enforce the law against a school administrator, without a rational basis and contrary to standard CMPD practice.

246. This selective non-enforcement favored Defendant Fairley and disadvantaged Minor Child, denying Minor Child equal protections under the law.

247. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights, pursuant to 42 U.S.C. § 1988.

## COUNT VII
## CONSPIRACY TO DEPRIVE CIVIL RIGHTS
### (As to Defendants McDaniel and Coleman)

248. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 247 above, as if fully set forth herein.

249. Upon information and belief, Defendant McDaniel and Defendant Officer Coleman reached an understanding to mischaracterize the cause of Minor Child's injuries, and to prevent accountability for Defendant Fairley.

250. Overt acts in furtherance of the conspiracy included blatant lies, false statements, coordinated narratives, and refusal to act on video evidence.

251. The conspiracy resulted in concrete constitutional injuries to Minor Child and his mother.

252. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights, pursuant to 42 U.S.C. § 1988.

## COUNT VIII
### (Pursuant to 42 U.S.C. § 12132)
## VIOLATION OF TITLE II of the AMERICANS WITH DISABILITIES ACT
### (As to CMS Defendants and Defendant Coleman in her Official Capacity)

253. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 252 above, as if fully set forth herein.

254. CMS is a public entity within the meaning of Title II of the Americans With Disabilities Act (hereinafter *"ADA"*).[20]

255. Minor Child is a qualified individual with a disability, within the meaning of Title II of the ADA.[21]

256. CMS Defendants and Defendant Coleman, denied Minor Child the benefits of safe access

---

[20] Title II of the ADA applies to public entities and to the services, programs, and activities they administer, including public education and school-based law enforcement.

[21] CMS and the Board are public entities subject to the ADA.

Case 3:26-cv-00245-MEO-DCK    Document 1-1    Filed 03/26/26    Page 38 of 43

to public education by:

(a) Using unreasonable and excessive force in violation of disability-sensitive restraint standards;

(b) Using and ratifying excessive force inconsistent with disability-sensitive restraint standards;

(c) Failing to modify policies, practices, or procedures to prevent further harm;

(d) Failing to provide reasonable modifications and de-escalation measures;

(e) Using force in lieu of disability-appropriate interventions;

(f) Implementing a response that punished and silenced the disabled child, rather than protecting him;

(g) Prioritizing institutional protection over disability-informed response;[22]

(h) Refusing to meaningfully address the known risk of repeated trauma.

257. CMS Defendants failed to provide reasonable modifications necessary to avoid discrimination, including trauma-informed support and safeguards.

258. Defendant Coleman, as an SRO assigned to CMS and acting in coordination with school administrators, was a service provider within CMS's public educational program.[23]

259. The discriminatory conduct was intentional, and/or was carried out with deliberate indifference to Minor Child's rights under the ADA.

260. The injuries and damages suffered by Minor Child were foreseeable and directly caused by CMS Defendants violations.

261. Defendants acted with deliberate indifference, entitling Plaintiffs to compensatory damages.

262. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights, pursuant to 42 U.S.C. § 1988.

---

[22] Under Fourth Circuit precedent, intentional discrimination under Title II may be established by deliberate indifference to a known risk of disability-based harm. See *Paulone v. City of Frederick*, 787 F. Supp. 2d 360 (D. Md. 2011).

[23] Defendant Coleman's conduct is attributable to the public entity for ADA purposes. See *Waller v. City of Danville*, 556 F.3d 171 (4th Cir. 2009).

**COUNT IX**
**(Pursuant to 29 U.S.C. §794)**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**
**(As to All Defendants)**

263. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 262 above, as if fully set forth herein.

264. CMS and the Board receive federal financial assistance and are subject to Section 504.[24]

265. Minor Child is an individual with a disability as defined by Section 504, in that he suffered a traumatic brain injury, corneal abrasions, and related neurological and emotional impairments, substantially limiting one or more major life activities, including learning, concentrating, blurred vision, and regulating emotional responses, and/or, was regarded by CMS Defendants as having such impairments following the assault.

266. Minor Child was otherwise qualified to participate in CMS's educational programs and activities.

267. Upon information and belief, Defendants denied the minor child the benefits of CMS programs and subjected him to discrimination, solely by reason of his disability by ignoring his IEP and 504 Plan, failing to accommodate his needs, and subjecting him to violent and punitive treatment.

268. CMS discipline and restraint policies require that staff consider a student's disability status, known or reasonably suspected disabilities, and trauma-related behaviors before using physical restraint or discipline.

269. Defendant Fairley's use of force was not a permissible safety intervention, but rather a punitive response to a minor policy violation, undertaken without disability-informed consideration or de-escalation.

270. Following the assault, Defendant McDaniel and other CMS Defendants:

(a) Failed to conduct an appropriate Section 504 evaluation;

(b) Failed to provide reasonable accommodations or protections;

(c) Imposed a so-called "safety plan" that restricted Minor Child's speech and conduct, rather than addressing the risk posed by Defendant Fairley;

---

[24] Section 504 prohibits discrimination against an otherwise qualified individual with a disability, under any program or activity receiving federal financial assistance.

(d) Ignored the foreseeable exacerbation of Minor Child's trauma and disabilities.

271. Upon information and belief, CMS Defendants excluded Minor Child from the full and safe benefit of educational services and subjected him to discrimination solely by reason of his disability.

272. The actions and omissions of CMS Defendants constitute at least deliberate indifference to Minor Child's federally protected rights.

273. At all relevant times, Defendant Officer Coleman was assigned to the school as a School Resource Officer, acted jointly with CMS administrators, and functioned as part of the school's disciplinary and safety apparatus.[25]

274. Defendant Coleman, as the School Resource Officer, knowingly minimized the assault, mischaracterized Minor Child as the aggressor, and refused to pursue accountability, despite awareness of the child's injuries and vulnerabilities.

275. As a direct and proximate result, Minor Child suffered physical injury, emotional distress, loss of educational benefit, and worsening disability-related symptoms.

276. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights, pursuant to 42 U.S.C. §1988.

## <u>COUNT X</u>
### (Pursuant to 29 U.S.C. §794(a) and 42 U.S.C. §12203)
### RETALIATION IN VIOLATION OF SECTION 504 and the ADA
### (As to CMS Defendants)

277. Plaintiff hereby incorporates, adopts, and re-alleges paragraphs 1 through 276 above, as if fully set forth herein.

278. Plaintiffs engaged in protected activity by:

(a) reporting the assault;

(b) seeking medical care and accommodations;

(c) requesting safety accommodations and protections; and,

(d) challenging false narratives concerning Minor Child's injuries.

---

[25] Under Fourth Circuit precedent, Section 504 applies to law enforcement officers when they act as participants in a federally funded program, including school-based policing and student discipline. See *Seremeth v. Bd. of Cnty. Comm'rs*, 673 F.3d 333 (4th Cir. 2012).

279. CMS Defendants, including Defendant McDaniel, responded with materially adverse actions, including but not limited to:

(a) Issuing a "safety plan" that imposed restrictions on Minor Child and his mother;

(b) Discouraging discussion of the assault at school;

(c) Failing to address or remediate the conduct of Defendant Fairley;

(d) Refusing to pursue investigation or accountability; and,

(e) Maintaining conditions that heightened Minor Child's fear and emotional distress.

280. These actions would deter a reasonable person from asserting disability-related rights.

281. CMS Defendants' conduct was causally connected to Plaintiffs' protected activity and undertaken with deliberate indifference and/or retaliatory motive.

282. Plaintiff is entitled to recover reasonable attorneys' fees, expert fees, and costs incurred in enforcing their federal civil rights, pursuant to 42 U.S.C. § 1988.

283. As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiff has suffered and will continue to suffer:

(a) Severe physical injuries, including traumatic brain injury and ocular injuries;

(b) Past and future medical expenses;

(c) Emotional distress, fear, anxiety, humiliation, and psychological trauma;

(d) Educational harm and loss of educational opportunities;

(e) Pain and suffering;

(f) Loss of enjoyment of life and educational experiences;

(g) Out-of-pocket expenses; and,

(h) Other expenses and damages.

**WHEREFORE**, Plaintiff prays for a trial on all issues and as follows:

1. That Defendants are found liable for damages sustained by Plaintiff, due to the negligent and/or

intentional acts of Defendants;

2. That Plaintiff have and recover punitive damages, sufficient to compensate him fully, fairly and completely for all loss compensable under North Carolina law;

3. That Plaintiffs have and recover all relief previously requested, including compensatory damages and attorneys' fees, pursuant to 42 U.S.C. §1988, 42 U.S.C. §1983 and 42 U.S.C. §12205.

4. That Plaintiffs have and recover costs of litigation, including reasonable attorney's fees;

5. Trial by jury on all issues so triable; and,

6. Any and all such further relief as the Court may deem just and proper.

Respectfully submitted, this 19th day of February, 2026.

Mary Frances Parker, Esq.
The Parker Firm, PLLC
321 Anthony Circle
Charlotte, NC 28211
Tel: 615-485-1584
maryfrances@theparkerfirmlaw.com
Attorney for Plaintiffs
NC Bar No. 55859

Faith R. Fox, Esq.
The Law Office of Faith Fox, PLLC
P.O. Box 30161
Charlotte, NC 28230
Tel: (704) 762-1588
Fax:(704) 980-7554
Email: F.Fox@faithfoxlaw.com
Attorney for Plaintiffs
NC Bar No. 49729