IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA CHARLOTTE DIVISION

Civil Action No. 3:26-CV-00245-MEO-DCK

ASHLEY BOLTON, individually
and as Guardian ad Litem of K.B.,
a minor,

        Plaintiffs,

v.

CHARLOTTE-MECKLENBURG
BOARD OF EDUCATION;
DEMETRUS McDANIEL, individually
and in her official capacity as Principal
of Renaissance West STEAM Academy;
SANDERS FAIRLEY, individually and
in his official capacity as Vice Principal
of Renaissance West STEAM Academy;
CITY OF CHARLOTTE; OFFICER
TALAYNA COLEMAN, individually and in
her official capacity; and
JANE/JOHN DOE(S),

        Defendants.

PLAINTIFF'S RESPONSE BRIEF
IN OPPOSITION TO CMS
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER

---

Come now Plaintiffs Ashley Bolton, individually and as Guardian ad Litem of K.B., a minor, respectfully submit this Response in Opposition to the Motion for Protective Order filed by the Charlotte-Mecklenburg Board of Education, Demetrus McDaniel, Sanders Fairley, and Jane/John Doe(s) (collectively, the "CMS Defendants"). For the reasons that follow, the Motion should be denied.

## I. INTRODUCTION

The CMS Defendants ask this Court, sitting in federal question jurisdiction over claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act, to restrict Plaintiffs' ability to disseminate a school surveillance video that, by Defendants' own concession, captures Vice Principal Sanders Fairley "purposefully injuring Plaintiff K.B., a student on or about October 27, 2025." Defendants concede that the video is

1

discoverable, must be produced to Plaintiffs, and may be used at trial. Their sole complaint is that once produced, the video should not leave the four corners of this litigation.

The Motion should be denied. First, the CMS Defendants have offered no particularized showing of good cause under Federal Rule of Civil Procedure 26(c)(1). They present only three generic assertions of reputational risk, social-media speculation, and lost "control," the paradigm of insufficient showings that federal courts uniformly reject. Second, the CMS Defendants' reliance on North Carolina's personnel-file statute, N.C. Gen. Stat. § 115C-321, is misplaced. That statute is a state public-records restriction, not a federal privilege, and does not govern civil discovery in a federal-question case. Third, even if the statute were relevant to the Rule 26(c) balancing analysis, the video is not a "personnel file" record. This video is contemporaneous documentary evidence of an assault on a minor, created by the school's own security system to record events in a public-school building. A school district cannot convert primary incident evidence into a shielded personnel record by merely placing a copy into a personnel file and rely on this after the fact to shield the video from public view.

This is not a routine confidentiality dispute. It is a public-school board asking a federal court to bar dissemination of the central evidence in a federal civil-rights and disability-discrimination case brought by the parent of a thirteen-year-old boy with an IEP who was left with a traumatic brain injury after being slammed head-first into a concrete floor by his own Vice Principal. The Motion should be denied. In the alternative, any protective order the Court enters should be strictly limited to particularized privacy interests actually shown, not the blanket restriction Defendants request.

Federal Rules of Civil Procedure, Rule 26(c) authorizes a protective order only for "good cause": to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. The discovery default is disclosure. A party that obtains information from an adversary through the civil discovery process is presumptively entitled to share that information with others.

## II. BACKGROUND

2

## A. The Federal Claims

This action arises under federal law. Plaintiffs plead claims under:

- 42 U.S.C. § 1983, excessive force under the Fourteenth Amendment; substantive due process (citing *Hall v. Tawney,* 621 F.2d 607 (4th Cir. 1980)); failure to intervene; municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); denial of access to the courts; equal protection / selective non-enforcement; and civil-rights conspiracy;
- Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132;
- Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and
- Anti-retaliation provisions of the ADA and Section 504, 42 U.S.C. § 12203 and 29 U.S.C. § 794(a).

Plaintiffs also plead state claims for assault and battery, negligence and gross negligence, negligent hiring/retention/supervision/training, and intentional infliction of emotional distress.

## B. The Incident

On or about October 27, 2025, K.B., an eighth-grade student at Renaissance West STEAM Academy, was told by a teacher that he was wearing headphones in violation of school policy. K.B. admitted the violation. Vice Principal Fairley issued a three-day suspension and directed K.B. to the principal's office. (Pl. Comp. Pg. 5).

The school's surveillance video captured the following: Vice Principal Fairley grabbed K.B. in a bear hug, attempted to strike him with a closed fist, used his body weight to take K.B. to the floor, sat on K.B.'s back, then picked K.B. up by the shoulders and slammed his head face-first into the concrete floor. A CMS employee, also captured on the video, appears to scream at Fairley to stop; he ignored her and continued. K.B. was taken to the emergency room, where he was diagnosed with a traumatic brain injury, two corneal abrasions, and a large forehead contusion. He continues to suffer severe emotional distress and fear of returning to school. (Id. Pg. 5,6).

At all times relevant, K.B. was formally identified by CMS as a student with a disability. He had/has an Individualized Education Program under IDEA and a Section 504 Plan. (Id. Pg. 33, 34).

## C. The Discovery Request and the CMS Defendants' Concessions

On April 3, 2026, Plaintiffs served their First Set of Interrogatories and Requests for

3

Production on Defendant Board. The relevant Request seeks: "Produce any and all surveillance video, security camera footage, and audiovisual recordings depicting or capturing, in whole or in part, the Incident." The parties held their Rule 26(f) Attorneys' Conference on May 11, 2026. Since the service of Plaintiff's written discovery, parties have made numerous good faith attempts to resolve the issue in dispute.

The CMS Defendants concede that the video is discoverable: "Defendant Board does not seek to prevent the discovery of, or to withhold the video from Plaintiffs or the Court." (Def. Mot. For P.O.). The CMS Defendants ground their request for a protective order on two sources of law: Federal Rule of Civil Procedure 26(c)(1) and North Carolina General Statutes §§ 115C-319 and 115C-321.

### III. LEGAL STANDARD

Rule 26(c) places the burden on the movant. A protective order under Federal Rule of Civil Procedure 26(c)(1) is available only for "good cause" and requires the movant to show a specific, particularized clearly defined and serious injury.  Moreover, the movant must "make ... a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one." *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D 255, 261 (M.D.N.C. 2001) (quoting *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C. 1991)).  If the movant makes the requisite showing, the burden shifts to the party seeking disclosure to show that the need for disclosure outweighs its harm. Id. At 261.  Defendant's arguments have failed to shift the burden to the Plaintiff.

Federal privilege and discovery law governs in a federal-question case. Under Federal Rule of Evidence 501, when federal claims are at issue, federal law of privilege applies to those claims. State confidentiality statutes do not create federal evidentiary privileges and do not displace the Federal Rules of Civil Procedure in a federal action arising under federal law. *United States v. Gillock*, 445 U.S. 360 (1980).

Any protective order must be narrowly tailored to the particularized interest actually

4

shown. Even where good cause is established as to a specific category of information, the resulting order must be no broader than necessary to protect that specific interest. A party that obtains information from an adversary through the civil discovery process is presumptively entitled to share that information with others. Nora Freeman Engstrom, et. al., *Secrecy by Stipulation,* 74 Duke L.J. 99 ((citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). ("Absent a protective order, parties to a lawsuit may disseminate materials obtained during discovery as they see fit)). Moreover, as a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings. *Id*. (quoting *American Tel. & Tel. Co. V. Grady*, 594 F.2d 594, 598 7th Cir. 1978).

## IV. ARGUMENT

A. The CMS Defendants' Generalized Reputational and Social-Media Concerns Are the Paradigm of Insufficient Good-Cause Showings.

The CMS Defendants have offered nothing beyond speculation. Their memorandum identifies three purported harms:

(a) "public scrutiny and lasting reputational damage" to Fairley, Herron, and Cooper;

(b) risk that the video "will be posted on social media, edited, manipulated, or taken out of context to embarrass or harass Defendants Board, Fairley, McDaniel, and Does"; and

(c) that "Defendant Board has no control over third-party use once the video enters the public domain."

None of these constitutes the particularized showing Rule 26(c) requires.

First, the CMS Defendants offer no evidence. They submit no affidavit, no declaration from Fairley, no statement from Herron or Cooper, and no evidence that any identifiable harm, beyond the general discomfort attendant to public accountability, would follow. Rule 26(c) requires more than the movant's assertions. In *Industrotech Constructors v. Duke University,* the court rejected a discovery objection based on asserted confidentiality where the resisting party had not carried its burden with more than conclusory assertions, and it approved narrower measures to protect legitimately sensitive material. 314 S.E.2d 272. In the same vein, and upon

5

this Court's request, Plaintiff are amenable to blurring the faces of Herron and Cooper as the least restrictive means possible, rather than agree to a protective order.

Second, generalized "reputational" concerns are precisely what federal courts routinely refuse to credit as good cause. Courts recognize that embarrassment can constitute harm justifying a protective order, but noted that "an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108 (3d Cir. 1986). Rule 26(c) protects against "annoyance, embarrassment, oppression, or undue burden," Fed. R. Civ. P. 26(c)(1), but garden-variety embarrassment associated with the exposure of one's own alleged misconduct is not a cognizable Rule 26(c) harm, particularly where the person invoking it is a named defendant in a federal civil rights case. Fairley cannot legitimately claim a protectable interest in preventing dissemination of the objective evidence of his own alleged assault on a student. His interest in avoiding public scrutiny of his on-duty conduct is not simply outweighed; it is not a cognizable interest under Rule 26(c).

Third, the "social media" argument is speculation. Defendants do not identify a single individual who has expressed an intent to post the video, edit it, or take it out of context. They ask this Court to enter a restrictive order based on the general observation that videos sometimes circulate on the internet. That is not a particularized showing.

Fourth, the concession that Defendants "have no control" over third-party use is not a Rule 26(c) harm, instead it is a description of how discovery works. Discovery routinely produces materials that a party wishes it could control after production. That is not a basis for restricting Plaintiffs' rights.

B. North Carolina's Personnel-File Statute Does Not Govern Federal Discovery.

The CMS Defendants pivot from Rule 26(c) to N.C. Gen. Stat. § 115C-321, which provides that "[a]ll information contained in a personnel file, except as otherwise provided in this Chapter, is confidential and shall not be open for inspection and examination." They then string together four state-court decisions in support. (*Times News Publishing Co. v. Alamance-Burlington Board of Education*, 242 N.C. App. 375 (2015); *News Reporter Co. v. Columbus*

6

*County*, 184 N.C. App. 512, 646 S.E.2d 390 (2007); *Elkin Tribune, Inc. v. Yadkin County Board of Commissioners*, 331 N.C. 735, 417 S.E.2d 465 (1992); and *Knight Publishing Co. v. Charlotte-Mecklenburg Hospital Authority*, 172 N.C. App. 486, 616 S.E.2d 602 (2005). This chain of authority does not do the work Defendants ask of it, for three independent reasons:

1. § 115C-321 is not a federal privilege. This is a federal court exercising federal-question jurisdiction. Federal Rule of Evidence 501 governs privilege as to Plaintiffs' federal claims, and federal discovery is governed by the Federal Rules of Civil Procedure. State statutes that restrict public inspection of certain records do not, and cannot, create federal evidentiary privileges enforceable to defeat otherwise-proper civil discovery in a federal § 1983 or ADA action. As courts have held, "Here, because Plaintiff's action involves claims arising under both federal and state law, the Court will apply the Federal law of privilege." *Smith v. City of Greensboro*, 2021 WL 10380232 at *5 (citing *Virmani v. Novant Health, Inc.*, 259 F.3d 284, 286 n.3 (4th Cir. 2001) ("We agree with our sister circuits that in a case involving both federal and state law claims, the federal law of privilege applies.")). Likewise, "State-created privileges do not supply the rule of decision in federal question cases and have no binding authority on federal courts." *Bost v. Wexford Health Sources, Inc.*, 2017 WL 3084953 at *3 (D. Md. June 19, 2017).

2. The cases Defendants cite are all public-records / press-access disputes, not civil discovery. Every one of the four decisions Defendants cite arose from a media entity's or citizen's request for public inspection of government records. None of these decisions addressed whether § 115C-321 restricts a private litigant's discovery in a civil action, much less in a federal civil right action. The distinction is dispositive: the North Carolina Court of Appeals has never held (and could not hold) that a state public-record statute overrides the federal discovery obligations owed to a plaintiff who has invoked federal jurisdiction to remedy federal constitutional and statutory violations.

3. Even courts that have applied § 115C-321 in the public-records context have done so on a narrow record-by-record analysis, not by treating the statute as a categorical shield.

7

The very authority Defendants cite makes this point plain. Under *News Reporter Co.*, "whether a document is part of a 'personnel file' depends upon the nature of the document and not upon where the document has been filed." 184 N.C. App. at 512. That principle, offered by Defendants, is fatal to their own theory, as explained in the next section.

C. The Surveillance Video Is Not a "Personnel File" Record — the CMS Defendants Cannot Transform Primary Evidence of an Assault into a Shielded Record by Filing a Copy in an HR Folder.

Section 115C-319 defines a "personnel file" as:

> any information gathered by the local board of education which employs an individual, previously employed an individual, or considered an individual's application for employment, and which information relates to the individual's application, selection or nonselection (sic), promotion, demotion, transfer, leave, salary, suspension, performance evaluation, disciplinary action, or termination of employment wherever located or in whatever form.

(quoting N.C. Gen. Stat. § 115C-319).

The surveillance video does not fit that definition, no matter where CMS chooses to file a copy of it.

The video does not "relate to" any enumerated employment action. The statute enumerates the categories of information that qualify: "application, selection or non-selection, promotion, demotion, transfer, leave, salary, suspension, performance evaluation, disciplinary action, or termination of employment." The video is a contemporaneous recording of a physical assault on a student. It was not generated as part of any employment process. It does not document any personnel decision about Fairley. It documents what happened to K.B. in the hallway of his school.

The video's nature, not its location, controls. The CMS Defendants concede that the video was "collected or 'gathered' into Defendant Fairley's personnel file when the District conducted a personnel investigation after the incident, reviewed the video, and subsequently saved the video as part of his personnel file." That concession is fatal. Under Defendants' own cited authority, "whether a document is part of a 'personnel file' depends upon the nature of the

8

document and not upon where the document has been filed." *News Reporter Co. v. Columbus County*, 184 N.C. App. 512, 516 (2007).

Defense counsel is improperly trying to use a statute to allow agencies to stash otherwise public records in "a particular location not generally subject to disclosure" merely to "shield from public scrutiny." *News Reporter Co.* at 394 (citing *Womack Newspapers, Inc. v. Town of Kitty Hawk*, 639 S.E.2d 96, 105 (2007)). Public-records statues are not intended to be used in this manner. *Id*.

A school district cannot transmute the primary evidence of a student's assault into an exempt personnel record by dropping a copy of the video into an HR folder after the incident. The nature of the video, contemporaneous incident evidence, does not change because CMS chose to file a copy of it in Fairley's HR file.  Notably, the Defendants Motion does not explain if or why the Board even relied on the video in determining whether Fairley committed employee misconduct.

The Defendants' construction would produce an absurd result. If Defendants' theory were accepted, every school district in North Carolina could shield any surveillance recording of any employee misconduct, no matter how egregious, by inserting a copy of the recording into the employee's personnel file. Public schools could unilaterally suppress evidence of employee-on-student violence, sexual misconduct, or other criminal conduct simply by opening an "investigation" and treating the primary evidence as a personnel record. That result cannot be reconciled with the plain text of the statute or with the public policy of North Carolina, and it is fundamentally at odds with the federal civil-rights framework under which Plaintiffs seek relief.

D. The Requested Protective Order Is Overbroad.

Even assuming, arguendo, that Defendants had established good cause as to something, the specific relief requested sweeps beyond any legitimate interest.  Impact on the public and the Plaintiff's First Amendment interests should be considered. The video is evidence of alleged government misconduct: a public-school administrator's alleged assault on a disabled child, followed by the alleged refusal of a City police officer to investigate. The public has a substantial

interest in transparency about such conduct, and the family has a First Amendment interest in speaking to that conduct. Any order restricting Plaintiffs' ability to speak about the video, or to show it in appropriate contexts, must be narrowly tailored to a particularized interest actually demonstrated. Defendants have demonstrated none.

Impact on litigation equilibrium. The video is Plaintiffs' evidence as much as it is Defendants'. Once produced, its use in aid of Plaintiffs' claims cannot be dictated by the party that allegedly committed the underlying assault. The practical effect of the proposed order would be to give the CMS Defendants, the alleged perpetrators, effective veto power over how the victim of that alleged assault uses the objective evidence of what was done to him.

The proposed order is not tied to any specific identified privacy interest. Defendants identify three individuals allegedly visible on the video: Fairley, Herron, and Cooper (all adults). Fairley is a named defendant. His "identity" is not a cognizable privacy interest in this litigation. As for Herron and Cooper, Defendants offer no showing that either has a specific, particularized interest in non-disclosure, no declaration, no employee statement, no facts about who they are, what they do, or how disclosure would specifically harm them. A blanket dissemination bar cannot be sustained on that record.

E. Any Order the Court Enters Must Be Narrowly Tailored.

The Court should deny the Motion. If, however, the Court concludes that any protective relief is warranted, it should be limited to the narrowest measure that addresses a specific, particularized interest Defendants have actually demonstrated. At most, the Court could consider, upon a proper, particularized showing as to each individual, a limited procedure requiring redaction of the identifying features (e.g., faces) of the two non-party bystanders (Herron and Cooper).

The Court should decline to enter the protective order the CMS Defendants request. That order would substitute Defendants' preferred narrative for the particularized showing Rule 26(c) demands.

### V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court DENY the

CMS Defendants' Motion for Protective Order. In the alternative, if any relief is warranted, Plaintiffs request that the Court enter a narrowly tailored order limited to the redaction of specifically identified non-party privacy interests upon a particularized showing, and that expressly preserves Plaintiffs' full litigation, expert, administrative, and speech-related use of the video as described above.

Respectfully submitted this 20th day of July, 2026.

/s/ Mary Frances Parker
Mary Frances Parker
NC Bar No. 55859
THE PARKER FIRM, PLLC
321 Anthony Circle
Charlotte, NC 28211
Tel: 615-485-1584
maryfrances@theparkerfirmlaw.com

/s/ Faith R. Fox
Faith R. Fox
NC Bar No. 49729
THE LAW OFFICE OF FAITH FOX, PLLC
P.O. Box 30161
Charlotte, NC 28230
Tel: 704-762-1588
Fax: 704-980-7554
F.Fox@faithfoxlaw.com
Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July, 2026, I electronically filed the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO THE CMS DEFENDANTS' MOTION FOR PROTECTIVE ORDER with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Heather Bankert
Oksana Cody
Charlotte-Mecklenburg Board of Education

11

600 E. Fourth Street, Fifth Floor
Charlotte, NC 28202
heathers.bankert@cms.k12.nc.us
oksanak.cody@cms.k12.nc.us
Counsel for Defendants Board, McDaniel, Fairley, and Doe

Lori Keeton
The Law Offices of Lori Keeton
6000 Fairview Road, Suite 1200
Charlotte, NC 28210
lkeeton@lorikeetonlaw.com
Counsel for Defendants City of Charlotte and Officer Coleman

/s/ Mary Frances Parker
Mary Frances Parker

12